UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHANDS JACKSONVILLE MEDICAL
CENTER, INC. d/b/a UF HEALTH
JACKSONVILLE
655 West 8th Street
Jacksonville, FL 32209

                    Plaintiff           Civil Action No.:

v.

ALEX M. AZAR II, in his official capacity as
Secretary of Health and Human Services
200 Independence Avenue, S.W., Room 700E
Washington, D.C. 20201

                    Defendant

## COMPLAINT

Shands Jacksonville Medical Center, Inc. d/b/a UF Health Jacksonville ("Shands"), by and through the undersigned counsel, hereby sues Alex M. Azar II, in his official capacity as the Secretary of Health and Human Services (the "Secretary") and alleges as follows:

### NATURE OF THIS ACTION

1. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1395 *et seq.* ("Social Security Act") and 5 U.S.C. §§ 551 *et seq.* ("APA") challenging final rules issued by the Centers for Medicare and Medicaid Services ("CMS") on November 1, 2017, November 1, 2018 and November 1, 2019. *See* 82 Fed. Reg. 52,356, 52,493-52,511, 52,622-52,625 (Nov. 13, 2017); 83 Fed. Reg. 58,818, 58,981 (Nov. 21, 2018); 84 Fed Reg. 61, 142, 61-317-27 (Nov. 12, 2019). The rules alter the Hospital Outpatient Prospective Payment System ("OPPS"), reducing Medicare reimbursement received by public and not-for-profit hospitals under section 340B of the Public Health Service Act (the "340B Program") by as much as approximately 30%.

2. Congress enacted the 340B Program in 1992. The effect of the program was to

122014716.1

lower the costs of drugs for qualifying public and not-for-profit hospitals serving large economically disadvantaged patient populations in order to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. REP. No. 102-384(II), at 12 (1992). *See also* 82 Fed. Reg. at 52,493 & n.18 (quoting House report and noting that "[t]he statutory intent of the 340B Program is to maximize scarce Federal resources as much as possible, reaching more eligible patients").

3. The 340B Provisions of the challenged rules target 340B discounts, effectively eliminating 340B drug discounts for participating hospitals. This was accomplished by reducing the reimbursement of covered, outpatient drugs and biologics to average sales price ("ASP") minus 22.5% from ASP plus 6 % beginning January 1, 2018. These rates remain effective at least through calendar year 2020 through the challenged rules. The reduction in rates has cost 340B hospitals an estimated $3.2 billion since January 1, 2018.

4. The reduction in 340B reimbursement rates exceeds the Secretary's authority in violation of the Secretary's statutory authority both under the Social Security Act to reimburse hospitals for outpatient drugs and Public Health Service Act provisions establishing the 340B program.

5. Shands is a not-for-profit hospital that utilizes savings from the 340B Program to provide healthcare services to underserved patient populations in its community. Shands has been damaged and will continue to be damaged by the Secretary's unlawful subversion of the 340B discount program, limiting its ability to serve economically disadvantaged populations to the detriment of public health. Shands is entitled to declaratory and injunctive relief, including a preliminary injunction setting aside the 340B Provisions of the challenged rules pending resolution of this action on its merits.

## PARTIES

6. Shands is a not-for-profit integrated health system based in Jacksonville Florida. It is Northeast Florida's premier academic health center, a leader in the education of health

122014716.1

professionals, a hub for clinical research and a unique provider of high-quality patient care. With more than 37 clinical sites in Northeast Florida, Shands treats over 600,000 outpatients and 34,000 inpatients annually.

7. At all times material to this action, Shands was a Medicare participating provider and a participant in the 340B program.

8. Defendant Alex M. Azar II, is the Secretary of Health and Human Services and is responsible for the conduct and policies of CMS, including administration of Medicare and the 340B program. The Secretary is sued in his official capacity.

## JURISDICTION AND VENUE

9. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, section 340B of the Public Health Services Act, 42 U.S.C. § 256b, and the Administrative Procedure Act, 5 U.S.C. § 701–06.

10. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 405 and 28 U.S.C. § 1331.

11. This judicial district is an appropriate venue pursuant to 28 U.S.C. § 1391(e), 42 U.S.C. § 405(g), and 42 U.S.C. § 1395ff(b)(2)(C)(iii).

## BACKGROUND

### I. The 340B Program

12. Congress established the 340B Program in 1992 as part of the Public Health Service Act. The 340B Program provides outpatient prescription drug discounts to hospitals serving a disproportionate share of low-income individuals. Under the 340B Program, private prescription drug manufacturers are required to offer discounts to 340B hospitals. These discounts are calculated pursuant to a statutory formula. 42 U.S.C. § 256b(a)(1).

13. Recognizing the value of the 340B Program in stretching hospital resources to

improve health care delivery to underserved populations, Congress has increased the categories of providers eligible to participate in the 340B program over time. *See*, 42 U.S.C. §256b(a)(4)(M)-(O).

## II. Medicare OPPS Reimbursement

14. In 1997, Congress directed CMS to develop a hospital Outpatient Prospective Payment System for Medicare to pay for services offered by hospital outpatient departments. CMS updates the OPPS payment rates annually.

15. Beginning in 2004, Congress required CMS to set reimbursement rates for covered outpatient drugs that are not bundled into the price of an outpatient service ("separately payable drugs"). Separately payable drugs are subject to 340B program discounts.

16. Congress set forth two alternative methods for setting Medicare reimbursement rates for separately payable drugs. CMS could set rates based on the acquisition costs of these drugs, if specified, statistically sound survey data on acquisition cost are available for each drug. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). But if the specified acquisition cost data are not available, CMS is required to reimburse based on ASP plus 6%. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).

17. After concluding that it could not obtain the acquisition cost data required in order to reimburse based on acquisition cost, CMS adopted the statutory default rate of ASP plus 6% for all separately payable drugs in 2012. CMS applied this statutory default rate without further adjustments until January 1, 2018.

## III. CMS's Reduction in Payment Rate for 340B Drugs

18. On July 13, 2017, CMS issued its proposed OPPS rule and Ambulatory Surgical Center payment systems for calendar year 2018. In addition to updating the OPPS with 2018 rates, CMS proposed to change how Medicare pays for separately payable drugs purchased under the 340B Program. 82 Fed. Reg. 33,558, 33,634 (July 20, 2017). Specifically, CMS proposed

122014716.1

lowering the government payment rate for such drugs from the statutory default rate of ASP plus 6% to ASP minus 22.5%. *Id.* at 33,634.

19. On November 1, 2017, CMS issued the final version of the OPPS rule, adopting the proposed rate of ASP minus 22.5% for drugs purchased under the 340B Program. *See* 82 Fed. Reg. 52,356, 52,362.

20. This new reimbursement rate nearly eliminated the benefit of the 340B program by eliminating the difference between the purchase price paid for separately payable drugs and reimbursement received from Medicare or those drugs, thus undermining the legislative intent in creating the 340B program.

21. The 340B provisions of the OPPS rule exceed the Secretary's authority because the rate reduction set forth in the Rule is expressly based on the estimated acquisition costs of 340B drugs as opposed to the requisite survey data of average sales price. CMS has never been able to obtain the statutorily required reliable cost data for each drug necessary to invoke the acquisition cost based rate setting method. Instead, CMS used estimated, aggregate acquisition costs from the Medicare Payment Advisory Commission as a proxy for that data in issuing the OPPS Rule. These estimates relate to the average acquisition costs for 340B hospitals alone and not manufacturer average sales price. Thus, the estimates are of acquisition cost *after* 340B discounts are applied, eliminating the differential between acquisition cost and reimbursement created by Congress through the 340B program.

22. CMS justifies this approach as within its discretion to calculate and adjust the statutory default rate of ASP plus 6%. But it is clear based on the methodology utilized by the Secretary in reducing 340B reimbursement rates that the Secretary is improperly exercising his authority to adjust the statutory rate to circumvent the statutory requirements for applying a cost based reimbursement methodology.

23. The 340B provisions of the OPPS rules also exceed the Secretary's authority because they effectively eliminate the benefit Congress granted to 340B providers, depriving eligible hospitals of resources intended for use in providing health care services to underserved

122014716.1

populations. Elimination of these resources has and will continue to curtail the ability of 340B hospitals to provide essential healthcare services and programs to their communities. This is inconsistent with the intent of the 340B program, which was designed to help covered entities stretch scarce federal resources to reach more patients. The effort of the Secretary to align the purchase price of 340B drugs with reimbursements for those drugs is directly contrary to Congress' intent to create a differential between reimbursements and purchase price so as to generate resources for 340B hospitals.

## EXHAUSTION OF REMEDIES

24. After a health-care provider performs Medicare-eligible services, it submits a claim for reimbursement to a Medicare Administrative Contractor ("MAC"). The MAC makes an initial determination whether to pay the claim, and if so, how much to pay. 42 C.F.R. § 405.920. If the MAC denies a claim for payment in whole or in part, the Social Security Act provides a four-level administrative appeal process. First, the provider may present its claim again to the MAC for "redetermination." 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. Second, the provider may seek "reconsideration" from a Qualified Independent Contractor ("QIC"). 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960. Third, the provider may seek *de novo* review by an administrative law judge in the Office of Medicare Hearings and Appeals. 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. §405.1000–58. If, however, an appeal turns on a question of law or regulation and does not present any material disputes of fact, then after or simultaneous with requesting third-level review by an administrative law judge, a provider may ask the Departmental Appeals Board to certify the appeal for expedited access to judicial review. 42 U.S.C. § 1395ff(b)(1)(A), (b)(2); 42 C.F.R. § 405.990. Fourth, the provider may seek *de novo* review by the Medicare Appeals Council, which is a part of the HHS Departmental Appeals Board. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 1100.

25. If HHS's final decision after this process is unfavorable, a provider may seek judicial review. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 1136.

26. In 2018, 2019 and 2020, Shands presented claims for payment to its MAC, First Coast

Service Options, Inc., for separately reimbursable drugs subject to the 340B program.

27. Consistent with the 340B provisions of the 2018, 2019 and 2020 OPPS rules, Shands received payment on these claims reflecting reimbursement based on ASP -22.5%.

28. Following receipt of the MAC's initial determinations, Shands submitted the claims for redetermination challenging the reimbursement on the grounds that Shands was underpaid due to application of an improper payment methodology.

29. The MAC issued unfavorable decisions on the said redetermination requests.

30. Upon information and belief, First Coast Service Options, Inc. has taken the position that administrative review is unavailable for challenges to the changes to 340B reimbursement rates.

31. At the direction of CMS, MACS across the country have taken the position that there are no appeal rights with respect to Medicare's national payment policy for 340B acquired drugs.

32. Therefore, Shands has presented specific claims for payment to the Secretary and any further administrative review would be futile because (a) no adjudicator within CMS has authority to invalidate a CMS regulation, and (b) CMS has taken the position that there is no administrative review of 340B Program reimbursement disputes.

## COUNT ONE

## VIOLATION OF THE SOCIAL SECURITY ACT

33. Paragraphs 1 through 32 above are realleged and incorporated herein by reference.

34. The Social Security Act and the APA require this Court to hold unlawful and set aside any decision of the Secretary that is arbitrary and capricious or contrary to law. 42 U.S.C. §§ 405(g), 1395ii; 5 U.S.C. § 706(2).

35. The reduction in reimbursement payment for 340B drugs under the OPPS rules for 2018, 2019 and 2020 is arbitrary, capricious, contrary to law, and in excess of the Secretary's

authority under the Medicare provisions of the Social Security Act, 42 U.S.C. § 1395*l*(t)(14)(A)(iii).

## PRAYER FOR RELIEF

WHEREFORE, Shands respectfully requests that this Court issue a declaratory judgment and injunctive relief in its favor and against the Secretary:

A. Declaring that the 340B Provisions of the OPPS Rule are an unlawful exercise of Defendants' authority, in violation of the Social Security Act and section 340B of the Public Health Service Act;

B. Directing the Secretary to strike the changes in the payment methodology for section 340B drugs from the OPPS rules and directing Defendants to use the default statutory rate of ASP plus 6% for all 340B Program payments for 2018, 2019 and 2020;

C. Directing the Secretary to reimburse Shands for previously submitted 340B claims at the default statutory rate of ASP plus 6%, less the amounts for which Shands has already been reimbursed on such claims, plus prejudgment interest.

D. Granting such other relief to which Plaintiffs may be entitled at law or in equity.

Dated: May 15, 2020

Respectfully submitted,

/s/ Emil Hirsch
EMIL HIRSCH (DC Bar No. 930479)
CARLTON FIELDS, P.A.
1025 Thomas Jefferson Street NW, Suite 400 West
Washington, DC 20007-5208
Telephone: 202-965-8100
Facsimile: 202-965-8104
E-Mail: EHirsch@carltonfields.com

*Attorney for Plaintiff*

122014716.1